FILED

2013 JAN 24 PM 4: 17

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY ___ND___ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD EDWARD JACKSON, III,<br><br>                    Plaintiff,<br>vs.<br><br>WILLIAM D. GORE, Sheriff of San Diego County; CAPTAIN PENA, San Diego Central Jail Facility Commander; COUNTY OF SAN DIEGO, Central Detention Facility, George Baily Detention Facility and San Diego Psychiatric Hospital,<br><br>                    Defendants. | CASE NO. 10-cv-2200-WQH(KSC)<br><br>**REPORT AND RECOMMENDATION TO DISMISS THIRD AMENDED COMPLAINT AND TO DENY REQUEST FOR ENTRY OF DEFAULT JUDGEMENT**<br><br>[Doc. Nos. 65, 72, 75] |

      Before the Court are three motions, including: defendants County of San Diego, William D. Gore, and Captain Pena's Motion to Dismiss Third Amended Complaint ("TAC") [Doc. No. 65]; plaintiff's Request for Entry of Default Judgement against defendant Dr. Noranyo [Doc. No. 72]; and defendant Dr. Noranyo's Motion to Dismiss plaintiff's TAC [Doc. No. 73]. The Court finds the issues appropriate for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). After a thorough review of the papers, the Court **RECOMMENDS** that the Motions to Dismiss [Doc. Nos. 65, 73] be **GRANTED**, the request for Entry of Default Judgement [Doc. No. 72] be **DENIED**, and plaintiff's TAC [Doc. No. 64] be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL HISTORY

On October 18, 2012, plaintiff Richard Edward Jackson, a former pretrial detainee proceeding *pro se* and *in forma pauperis*, initiated this civil rights action against several defendants under 42 U.S.C. § 1983. [Doc. No. 1] After the original Complaint was dismissed without prejudice for failing to prepay the civil filing fees and/or failing to move to proceed *in forma pauperis* [Doc. No. 3], plaintiff filed a First Amended Complaint ("FAC") on January 31, 2011. [Doc. No. 10] On April 11, 2011, the FAC was dismissed without prejudice for failing to state a claim and for seeking monetary damages against defendants who are immune pursuant to 28 U.S.C. § 1915(e)(2)(B). [Doc. No. 11] On May 18, 2011, plaintiff filed a Second Amended Complaint ("SAC"). [Doc. No. 12] Motions to Dismiss the SAC were filed by defendant Dr. Noranyo on July 26, 2011 [Doc. No. 21], by defendants Dumanis, Gore, and Pena on August 1, 2011 [Doc. No. 22], and by defendant County of San Diego on November 16, 2011 [Doc. No. 56].

On January 23, 2012, United States Magistrate Judge Cathy A. Bencivengo issued a Report and Recommendation to grant all of the Motions to Dismiss and to dismiss the SAC in its entirety with prejudice, citing plaintiff's repeated failure to state a legally sufficient claim. [Doc. No. 58] Plaintiff timely filed an Objection to Judge Bencivengo's Report and Recommendation. [Doc. No. 61] On March 13, 2012, United States District Judge William Q. Hayes issued an Order adopting in part Judge Bencivengo's Report and Recommendation. [Doc. No. 62] In his Order, Judge Hayes granted the Motions to Dismiss, dismissing one claim with prejudice and the other without prejudice. Specifically, plaintiff's claim regarding the adequacy of the medical treatment he received for his mental health issues while housed at San Diego Central Detention Facility was dismissed with prejudice. However, his claim regarding the conditions of his confinement in a personal safety cell at San Diego Central Detention Facility was dismissed without prejudice [Doc. No. 62, p. 7] With respect to plaintiff's conditions of confinement claim, Judge Hayes granted leave to amend the SAC. *Id.*

On April 25, 2012, plaintiff timely filed a Third Amended Complaint ("TAC") against Captain Pena, County of San Diego, Dr. Noranyo, and Sheriff William D. Gore. [Doc. No. 64] On May 4, 2012, defendants County of San Diego, Pena, and Gore filed a Motion to Dismiss the TAC. [Doc. No. 65] On July 6, 2012, plaintiff filed an Opposition [Doc. No. 69], as well as a Motion to File

1  Electronically. [Doc. No. 70] On July 16, 2012, plaintiff filed a Motion for Entry of Default against
2  Dr. Noranyo based on his failure to answer the TAC. [Doc. No. 72] On October 3, 2012, defendant
3  Dr. Noranyo filed a Motion to Dismiss. [Doc. No. 73]

## II. DISCUSSION

### A. Plaintiff's Third Amended Complaint Fails to State a Legally Sufficient Claim

In the Order granting plaintiff leave to file a TAC as to claims regarding the conditions of his confinement in the safety cell, Judge Hayes stated that any amended pleading "must be complete in itself and may not incorporate by reference any prior pleading." [Doc. No. 62, p. 7] The Order further held that "[a]ny defendant not named, and all claims not re-alleged, will be deemed waived." *Id.* Lastly, plaintiff was warned that if his "amended complaint fails to state a claim upon which relief may be granted, it may be dismissed without further leave to amend." *Id.* (citing *McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996)). For the reasons outlined below, the claims against defendants County of San Diego, Gore, and Pena[1] contained within plaintiff's TAC should be dismissed with prejudice for failing to state a legally sufficient claim under Rule 12(b)(6).

### 1. Plaintiff's TAC

In his TAC, plaintiff alleges that his civil rights were violated when he was twice placed in a "safety cell" at the San Diego Central Detention Facility.[2] [Doc. No. 64, p. 1] Specifically, on May 14, 2010 and on June 2, 2010, after disclosing to "jail staff" in May and to the "deputy Sheriffs on watch" in June that he was contemplating suicide, plaintiff was escorted to a "safety cell." *Id.* Plaintiff alleges that officers used improper force in escorting him to this cell. *Id.* Further, plaintiff claims the cell was "a padded cell no more than 9 feet by 9 feet" and that it was "completely not adequate for human living." *Id.* With respect to the cell's alleged deficiencies, plaintiff alleges the following: "inadequate ventilation[,] . . . excessive cold[,] . . . lack of drinkable water[,] . . . exposure

---

[1] In the TAC, plaintiff withdrew his complaint against previously named defendant San Diego County District Attorney Bonnie Dumanis on grounds that he does "not know if she has a role in the policy of the safety cell." [Doc. No. 64, p. 2] Accordingly, the Court recommends that Ms. Dumanis be dismissed as a party.

[2] Plaintiff refers to the facility as the Central Detention Facility, while defendants refer to it as San Diego Central Jail. As both names are listed at the same mailing address, 1173 Front Street, San Diego, California 92101, the Court assumes the parties are referring to the same facility.

to sewage[,] . . . sleep deprivation[,] . . . sleeping on the floor[,] . . . inadequate food and unsanitary food service[,] . . . constant lighting[,] . . . defective plumbing[,] . . . deprivation of basic sanitation[,] . . . [and] denial of adequate toilet facilities." *Id.* at 1-2 (citations to case law omitted). Plaintiff is uncertain about the length of time he was in the cell because during "each incident [he] was suffering from severe psychological hallucinations." *Id.* at 2.

In addition to listing constitutional deficiencies with the condition of the safety cell itself, plaintiff alleges that his placement in the cell violated his right to adequate medical care in numerous ways, including: "a lack of adequate me[n]tal health screening on intake[,] . . . failure to provide adequate number of qualified mental health staff[,] . . . lack of training of custody staff in mental health issues[,] . . . failure to follow up on prisoners with known or suspected mental health disorder[,] . . . [and] failure to transfer seriously mentally ill patient to more appropriate facilities." *Id.* at 1.

With respect to the identities of the parties involved, other than stating that he was in the pre-trial custody of San Diego County Sheriff William Gore (seemingly in his capacity as the currently appointed Sheriff), that he was being housed at a facility where "Captain Pena is the facility commander," and that he was escorted by "Sheriffs Deputies," plaintiff does not specifically identify any of the officers or staff involved. *Id.* at 1.

### 2. Motion to Dismiss Plaintiff's TAC and Plaintiff's Opposition

On May 4, 2012, defendants County of San Diego, Captain Pena, and William Gore filed a Motion to Dismiss the TAC. [Doc. No. 65, Exh. 1] Defendants argue the TAC should be dismissed because plaintiff fails to plead a viable conditions of confinement claim, he does not allege any facts supporting liability on the part of Sheriff Gore or Captain Pena, and he fails to plead a *Monell* claim against the County. [Doc. No. 65, Exh. 1, pp. 4-9] While defendants do not address the merits of plaintiff's allegations that placement in the cell violated his right to adequate medical care, they properly cite this Court's May 13, 2012 Order which dismissed <u>with prejudice</u> plaintiff's claims "regarding medical treatment for his mental health issues at San Diego's Central Facility." [Doc. No. 65, Exh. 1, p. 3 (citing Doc. No. 62)]

On June 6, 2012, plaintiff filed an Opposition to defendants' May 4, 2012 Motion to Dismiss. [Doc. No. 69] For the first time and despite being previously unable to provide an estimate due to

"hallucinations," plaintiff raises arguments regarding the length of his confinement in the safety cell. *Id.* at 1. Plaintiff contends the cell is intended only for short periods of time, but that he was allegedly placed in it for "more than 24 hours" in May 2010 and "for a long time" in June 2010. *Id.* Further, plaintiff provides the following specific facts regarding the conditions of his confinement in support of the allegations in his TAC: he was completely naked while confined in the cell; the floor was filthy; instead of a toilet, a "storm drain" in the middle of the floor was available; the cell was cold; previous inmates' bowel movements and urine remained in and around the drain; and plaintiff was forced to use the drain, both to urinate and defecate, without access to toilet paper or water to cleanse himself. *Id.* at 2.

Lastly, plaintiff attempts to discuss San Diego County's underlying "safety cell" policy and to more specifically identify the parties involved. Plaintiff contends that his rights were violated by "a number of [San Diego County] **policy making employees**," who committed violations pursuant to a "formal policy which is the standard operating procedure of the local government entity." *Id.* (emphasis in original). Without discussing the terms of the actual policy, plaintiff claims that "San Diego County has a 'safety cell' policy that when implemented on a prisoner like [him] violate[s] a number of prisoner civil rights like [he] stated in the TAC." *Id.* Without citing any specific action taken by Captain Pena, plaintiff argues his move to the "safety cell" was somehow statutorily sanctioned by Pena "according to California Code making him directly responsible." *Id.* at 3. Plaintiff also identifies Sheriff Gore by stating it is his job to "ensure that his detention facilities are implementing policy and administrating procedure correctly." *Id.* Lastly, defendant Dr. Noranyo is specifically mentioned in his role as a staff member whom plaintiff begged for release from the cell. *Id.*

### 3. Standard of Review: Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim" by looking at the face of the complaint. *See* FED.R.CIV.P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729.732 (9th Cir. 2001). Accepting the factual allegations in the complaint as true, a court deciding whether a claim is legally sufficient under Rule 12(b)(6) focuses on the sufficiency of a claim itself, rather than the claim's substantive merits. *Van Buskirk v. Cable News Network, Inc.* 284 F.3d 977, 980 (9th Cir.

2002). Accordingly, a court will typically "look only at the face of the complaint to decide a motion to dismiss," along with any exhibits which are attached. *Id.*; *see also* FED.R.CIV.P. 10(c).

A motion to dismiss should be granted if a complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8 "does not require 'detailed factual allegations,'. . . it demands more than unadorned, the-defendant-unlawfully-harmed me accusation." 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (referring to FED.R.CIV.P. 8)). While allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party, the Court need not accept as true generic legal conclusions, unwarranted deductions of fact, or unreasonable inferences. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice.").

### a. Plaintiff's Conditions of Confinement Claim Fails under Rule 12(b)(6)

Plaintiff's TAC fails to allege sufficient facts to survive defendants' Motion to Dismiss. The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on prison officials to "provide human conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). While plaintiff was a pretrial detainee, and not a prisoner, and his rights with respect to the conditions of his confinement come "under the Fourteenth Amendment" and not the Eighth, his rights "are comparable to prisoners' rights under the Eighth. . . [as courts] apply the same standards." *Frost v. Agnos*, 152 F.3d 1123, 1128 (9th Cir. 1998). Like prisoners, pretrial detainees are guaranteed to receive "adequate food, clothing, shelter, sanitation, and medical care." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Minimal deviations from comfortable conditions which do not last for an extended time period are considered "de minimis injuries" and do not "constitute a constitutional violations." *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832.

To properly plead "cruel and unusual" punishment, a prisoner or pretrial detainee must allege

facts which demonstrate that he was confined under conditions posing a risk of "objectively, sufficiently serious" harm and that prison officials had a "sufficiently culpable state of mind." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Thus, there is both an objective and subjective component to the inquiry. *Hallett v. Morgan*, 296, F.3d 732, 744 (9th Cir. 2002). More specifically, for plaintiff to state a viable conditions of confinement claim, he must first plead facts sufficient to show that he was subjected to an objectively serious deprivation of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832. The "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of the inquiry. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 1999).

Second, plaintiff must demonstrate the prison official's subjective "culpable state of mind" by showing the official acted with "deliberate indifference" to his health or safety. *Farmer*, 511 U.S. at 834. This requires the prisoner to allege facts which show that the official displayed a subjective indifference "to a substantial risk of serious harm." *Frost*, 152 F.3d at 1128. "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If an official "should have been aware of the risk, but was not, then the [official] has not [violated a party's Constitutional rights], no matter how severe the risk." *Gibson v. Couty of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

With respect to confinement claims arising out of the temporary use of safety cells, the Ninth Circuit squarely addressed the constitutionality of the practice in *Anderson v. County of Kern*:

> The safety cell is admittedly a very severe environment, but it is employed in response to very severe safety concerns. There was amply testimony that some prisoners became so violent and such a danger to themselves that temporary placement in a safety cell was needed in order to deprive the prisoners of all means of harming themselves. The fact that some prisoners who are violent or threaten violence to themselves or others may be mentally disturbed or suicidal does not detract from the need. There was testimony that sinks, stand-up toilets, and beds can be and have been used by prisoners to harm themselves by banging against them or by other means. Deprivation of these articles for short periods of time during violent episodes is constitutionally justifiable.

*Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995), *cert denied*, 516 U.S. 916 (1995).

Therefore, when temporarily employed in the response to very serious safety concerns, use of safety cells is not inherently unconstitutional. *Id.* To the contrary, in response to threats of violence suicide by prisoners, the Ninth Circuit finds the safety cell environment to be both necessary and "constitutionally justifiable." *Id.*

Here, plaintiff has failed to adequately *plead* sufficient facts to support his conditions of confinement claim. Plaintiff claims in his TAC that the cell's conditions violated his rights due to a list of allegedly unconstitutional deficiencies. However, plaintiff fails to provide any specific underlying factual support for the list of naked conclusions he provides regarding the cell. Rather, plaintiff's TAC contains legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation). For example, while plaintiff claims the cell had "inadequate ventilation[,]...excessive cold[,]...lack of drinkable water[,]...exposure to sewage[,]...sleep deprivation[,]...sleeping on the floor[,]...inadequate food and unsanitary food service[,]...constant lighting[,]...defective plumbing[,]...deprivation of basic sanitation[,] ...[and] denial of adequate toilet facilities," plaintiff provides no factual allegations to support these claims or to explain how or why something was inadequate or defective. The pleading requirement for these types of claims requires more detail.[3] While allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party, the Court need not accept as true generic legal conclusions. *Cahill*, 80 F.3d at 337-38; *Sprewell*, 266 F.3d at 988; *Iqbal*, 556 U.S. at 678.

With respect to the objective prong of the inquiry, taking all the factual allegations contained in plaintiff's TAC to be true, plaintiff fails to plead any facts establishing a serious deprivation. Plaintiff being temporarily placed in a padded safety cell after expressing his desire to commit suicide does not constitute a serious deprivation. *See Anderson*, 45 F.3d at 1314-15. With respect to the duration of time plaintiff spent in the subject cell, due to his suffering from severe psychological hallucinations during his confinement, plaintiff is not certain how long he was in the safety cell. *Id.*

---

[3] For example, in *Smith v. Copeland*, the Eighth Circuit dismissed on the pleadings Smith's Eighth Amendment claim based on exposure to raw sewage from an overflowing toilet because "Smith did not allege that he was exposed to disease or suffered any other consequences of the exposure." *Smith v. Copeland*, 87 F.23d 265, 268 (8th Cir. 1996).

While providing no time estimate in his TAC, in his Opposition to defendants' Motion to Dismiss his TAC, plaintiff now estimates he was in the cell for "24 hours or more" on May 14, 2010, and for "a long time" for the June 2, 2010 confinement. [Doc. No. 69, p. 2]

While plaintiff's Opposition to defendants' Motion to Dismiss the TAC supplies slightly more detailed factual allegations as additional support, plaintiff was specifically instructed by Judge Hayes in the March 13, 2012 Order granting him leave to amend on the confinement issue that any amended pleading "must be complete in itself and may not incorporate by reference any prior pleading." [Doc. No. 62, p. 7] Under the applicable standard of review, when deciding a 12(b)(6) motion to dismiss, the Court is to look solely at the four corners of the complaint, and any exhibits attached therein. Consideration of plaintiff's Opposition to defendants' Motion to Dismiss goes beyond the scope of this review. The Court recognizes that plaintiff is a *pro se* litigant proceeding *in forma pauperis* who suffers from bipolar disorder, and for this reason the Court will expand the scope of its review to include plaintiff's Opposition.

Even expanding the scope of 12(b)(6) review by looking outside of the TAC, the factual allegations contained in plaintiff's Opposition still do not rise to the level of an objectively serious deprivation. Assuming plaintiff's allegations are true, the Court can recognize plaintiff's discomfort with being placed naked in an empty, unclean, and toilet-less cell, outfitted only with an already used storm-drain-restroom. However, the Ninth Circuit in *Anderson* found that the temporary use of a safety cell containing almost identical conditions did not rise to the level of a constitutional deprivation.[4] Instead, all of plaintiff's complaints can arguably be categorized as "routine discomfort[s] inherent in the [communal] prison setting," which, as per *Johnson*, is inadequate to satisfy the objective prong of the inquiry. *Johnson,* 217 F.3d at 731. Further, such temporary discomfort surely pales in comparison with the objectively imminent and deadly threat plaintiff's suicidal threats posed to his health and safety.

For the reasons stated above, and given plaintiff's admitted suicidal condition, his claims do

---

[4] The safety cell at issue in the *Anderson* case was "approximately 10 feet by 10 feet, [was] covered with rubberized foam padding, and [had] a pit toilet with a grate. If inmates [were] in the cell at mealtime, they [ate] their meals there." *Anderson,* 45 F.3d at 1313.

not demonstrate that he was without "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 832. To combat his threat of suicide, certain items were taken from him. While he was without clothing, a wash basin, a traditional toilet, and a bed, he was provided with food and water. Further, although the exact length of time is in dispute, his confinement in the safety cell was temporary, not permanent. Given the severity of a suicide threat, plaintiff's confinement in the safety cell does not constitute a constitutional violation. *See Bell*, 441 U.S. at 539; *see also Anderson*, 45 F.3d at 1315 ("Prison officials have to have some means of controlling violent or self-destructive inmates temporarily until the episode passes.").

With respect to the subjective prong, plaintiff must plead sufficient facts to demonstrate both that (1) the named defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (2) that the defendants actually drew that inference. *Farmer*, 511 U.S. at 837. Here, plaintiff failed to provide any specific factual allegations to suggest that any of the individually named defendants displayed a subjective indifference "to a substantial risk of serious harm" by placing him in the safety cell. To the contrary, "[p]rison officials are not culpable when they put an inmate who imminently threatens or attempts suicide temporarily in a place where he cannot hurt himself." *Anderson*, 45 F.3d at 1315.

As stated above, the closest plaintiff comes in his TAC to identifying any of the defendants is his claim that he was in the constructive custody of San Diego County Sheriff William Gore (in his capacity as the currently appointed Sheriff), that he was being housed at a facility where "Captain Pena is the facility commander," and that he was escorted by "Sheriffs Deputies." [Doc. No. 64, p. 1] Otherwise, plaintiff does not specifically identify any of the officers or staff involved, nor does he specifically attribute any particular actions or states of mind to these named parties. In his Opposition, plaintiff again mentions Captain Pena and Sheriff Gore in their official capacities for the County, along with other, unnamed "policy making employees." [Doc. No. 69, p. 2] Missing from the papers are <u>any</u> allegations or relevant facts regarding the subjective states of minds of the named defendants. Taking the allegations in a light most favorable to plaintiff, nothing in plaintiff's TAC or Opposition indicates that any of the named defendants evidenced a "sufficiently culpable state of mind" by acting with "deliberate indifference" to plaintiff's health or safety. *Farmer*, 511 U.S. at 834.

For the reasons articulated above, plaintiff has failed to allege any facts supporting his conditions of confinement claim. Accordingly, defendants' Motion to Dismiss plaintiff's TAC [Doc. No. 65] should be **GRANTED** and all claims against defendants County of San Diego, Gore, and Pena contained in plaintiff's TAC should be **DISMISSED with prejudice.**

### b. Defendants Gore and Pena Are Not Liable under *Respondeat Superior*

It is well-established that "liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of ... subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, a supervisor can be held vicariously liable for the unconstitutional misconduct of their subordinates if they act with deliberate indifference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011), cert denied 2012 WL 1468577 (Apr. 30, 2012). Thus, in a conditions of confinement claim, "a plaintiff may state a claim against a supervisor for deliberate indifference" by demonstrating that the "supervisor had knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1207.

Here, as discussed in section II(A) above, plaintiff fails to allege any facts to demonstrate that Sheriff Gore or Captain Pena personally participated in any acts of constitutional deprivations or knew of or acquiesced in any such deprivations by others. Accordingly, and in the alternative, in absence of any "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," plaintiff's claims against Gore and Pena under a theory of supervisory liability should be **DISMISSED**. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### c. Plaintiff Fails to Plead a *Monell* Claim Against the County

Plaintiff's allegations are insufficient to state a federal civil rights claim against the County pursuant to *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690 (1978). In *Monell*, the Supreme Court held that a local government entity such as the County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers, or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is

responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Redman v. County of San Diego*, 942 F.2d 1435, 1443-44 (9th Cir. 1991)(en banc). A *Monell* claim may not be pursued in the absence of an underlying constitutional deprivation or injury. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [the officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."), *cert. denied*, 537 U.S.1044 (2002); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir.1994).

Here, plaintiff's allegations are insufficient to state any underlying constitutional deprivation or injury. Plaintiff has alleged that he was placed in the safety cell on two different occasions after reporting that he felt suicidal. Temporary placement of a suicidal pretrial detainee in a safety cell is not inherently a constitutional violation. *See Anderson*, 45 F.3d at 1315 ("Prison officials have to have some means of controlling violent of self-destructive inmates temporarily until the episode passes."). Moreover, while plaintiff makes some general allegations in the TAC and his Opposition about a "policy" that has caused his constitutional rights to be violated, plaintiff fails to allege exactly what that policy is, or how he was injured by the execution of any such policy, or any other underlying supporting facts. Accordingly, and in the alternative, because plaintiff failed to alleged facts sufficient to demonstrate how any policy or custom of the County of San Diego violated his constitutional rights, the County should be **DISMISSED** as a party.

### B. Plaintiff's Request for Default Judgment Against Dr. Noranyo should be Denied

On July 16, 2012, plaintiff filed a request that the Clerk of the Court enter a default judgment against defendant Dr. Noranyo based on his failure to "plead or otherwise defend" against plaintiff's April 25, 2012 TAC. [Doc. No. 72] Considering the procedural posture of this case, the Court finds entry of default judgment against defendant Dr. Noranyo to be inappropriate at this time.

This case has been on the Court's docket since October 18, 2010 [Doc. No. 1] and plaintiff is currently on his fourth attempt at filing a Complaint. [Doc. Nos. 1, 10, 12, 64] Further, plaintiff's SAC was recently dismissed by the Court, one claim with prejudice and the other without prejudice. [Doc. No. 62] The portion of the SAC which was dismissed with prejudice was the claim with more gravity on Dr. Noranyo as an individual, namely the claim challenging the adequacy of the medical care received by plaintiff while in custody. Understandably, this may have created confusion regarding the

necessity of any additional responses required by Dr. Noranyo to plaintiff's TAC.[5] For these reasons, plaintiff's request should be **DENIED**.

### C. Defendant Dr. Noranyo's Motion to Dismiss Plaintiff's TAC should be Granted

The claims against defendant Dr. Noranyo contained within plaintiff's TAC should be dismissed with prejudice for failing to state a legally sufficient claim. Incorporating by reference the facts, legal standards, and discussion articulated in section II(A) above, not only does plaintiff's TAC fail to state claims against defendants Gore, Pena, and San Diego County, it also fails the pleading standard under Rule 12(b)(6) with respect to his allegations against Dr. Noranyo.

Dr. Noranyo asserts that the only allegation in plaintiff's TAC which specifically references him is the following: "I do remember crying and asking for Dr. Noranyo, other staff, and Sheriff Deputies to release me from the safety cell this [sic] was useless and the punishment continued." [Doc. No. 73, p. 4 (citing Doc. No. 64, p. 2)] Further, plaintiff's Opposition to the Motion to Dismiss filed by defendants County of San Diego, Gore, and Pena also states, "I begged nursing staff including the director of psychiatry Dr. Noranyo to release me from the cell because it did nothing for my suicidal thoughts and just like explained by the psychiatrist expert witness in the similar federal case the safety cell made my depression worsen and the facility staff did not listen to me and at no time did I show signs of violence." [Doc. No. 69, p. 3] Absent these allegations, plaintiff's papers do not identify, let alone tangentially reference, any of Dr. Noranyo's allegedly constitutionally deficient actions or omissions.

Since the claim challenging the adequacy of the medical treatment provided to plaintiff has already been dismissed with prejudice [Doc. No. 62], plaintiff's conditions of confinement claim is the sole remaining claim at issue. Accordingly, the Court will assess the allegations against defendant Dr. Noranyo only with respect to any role he played in impacting the conditions of plaintiff's confinement. From the papers, it is unclear what role if any Dr. Noranyo played in plaintiff's placement in the cell and what Dr. Noranyo did, or failed to do, that kept plaintiff in the cell beyond

---

[5] Considering the procedural posture, the Court will construe Dr. Noranyo's October 3, 2012 Motion to Dismiss plaintiff's TAC [Doc. No. 73] as an Opposition to plaintiff's request for entry of default.

his desired time. For the same reasons stated in section II(A) above, the Court finds that plaintiff has not plead sufficient facts against Dr. Noranyo from which the Court can draw reasonable inferences that Dr. Noranyo violated plaintiff's constitutional rights while plaintiff was in custody as a pretrial detainee. Further, even assuming it was Dr. Noranyo's decision to place plaintiff in the cell, being placed temporarily in a safety cell after indicating a desire to commit suicide does not constitute a serious constitutional deprivation. *Anderson*, 45 F.3d 1314-15.

Accordingly, defendant Dr. Noranyo's Motion to Dismiss plaintiff's TAC [Doc. No. 73] should be **GRANTED** and all claims against defendant Dr. Noranyo contained in plaintiff's TAC should be **DISMISSED with prejudice**.

### III.  CONCLUSION

For all of the above reasons, the Court **RECOMMENDS** that defendants' Motions to Dismiss [Doc. Nos. 65, 73] be **GRANTED** and that plaintiff's Third Amended Complaint be **DISMISSED WITH PREJUDICE** in its entirety.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

IT IS ORDERED that no later than **30 days from issuance of this Order**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation to Grant Dismissal."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **ten days after being served with the objections**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Date: January 24, 2013

KAREN S. CRAWFORD
United States Magistrate Judge